(Note: The following case was decided by OLIVER, MOLLISON, and LAWRENCE, Judges.)

No. 59875.—Shell Oil Co., Inc., and A. W. Salter & Co., Inc. v. United States, protest 135145–K (New York).

OLIVER, Chief Judge: This protest involves a commodity bearing the trade name "Teepol," which was assessed with duty at the rate of 25 per centum ad valorem under the provision in paragraph 37 of the Tariff Act of 1930, for "esters of all kinds not specially provided for." Plaintiffs' original claim was for classification of the merchandise as soap, under paragraph 80 of the Tariff Act of 1930, carrying a dutiable rate of 15 per centum ad valorem.

The case was the subject of our decision in *Shell Oil Co., Inc., et al.* v. *United States*, 30 Cust. Ct. 180, C. D. 1517, wherein we held that the merchandise was neither an ester, as classified, nor a soap, as claimed, and, accordingly, overruled the protest, without affirming the action of the collector. Our conclusion in the cited case was stated as follows:

The merchandise in question, being a manufactured commodity, as hereinabove set forth, and not being specifically provided for in the tariff act, the prod-

uct finds classification under paragraph 1558 of the Tariff Act of 1930 as a non-enumerated manufactured article. Since, however, that claim is not alleged by plaintiffs, the protest must be and hereby is overruled, without affirming the action of the collector.

Plaintiffs moved for a rehearing for the sole purpose of amending their protest to include a claim for classification of the merchandise under paragraph 1558, *supra.* Defendant opposed the motion and in its "Memorandum in Opposition to Motion for Rehearing" stated that "if such a motion were granted, the defendant should be permitted to introduce evidence." Rehearing was granted, and the majority opinion of the "Decision on Application for Rehearing" (32 Cust. Ct. 438, Abstract 57957) stated as follows:

Plaintiffs' motion, at this time, is based on the premise that said paragraph 1558 must apply to the present merchandise, as indicated in the court's decision. Defendant, on the other hand, takes a different attitude, as disclosed by the memorandum in opposition to the present motion, wherein permission is asked to introduce evidence, if the motion for rehearing is granted. The inference to be drawn from defendant's request is that there is available to the Government certain proof that will show the merchandise in question to be enumerated within the tariff act.

In view of the facts and circumstances, as hereinabove outlined, leading to the motion now before us, it is our opinion that the interests of justice will be served best by setting aside the judgment heretofore rendered and granting a rehearing for all purposes.

It is so ORDERED.

The case is before us at this time, pursuant to the foregoing order.

In our original decision, C. D. 1517, *supra,* the process of manufacture of the merchandise in question was described as follows:

Waxy materials, particularly residues from paraffin-wax manufacture, or waxes separated from petroleum refining, are subjected to intensive heat, cracking the substances into chemical elements (hydrocarbons), known as "olefins." By distillation, a selected cut or fraction—$C_8$ to $C_{18}$—of the olefins is obtained to form the base material for the ultimate product. These distilled olefins are reacted with sulfuric acid and then neutralized with caustic soda. The neutralized product is given an extractive treatment with a mixture of solvents, removing unreacted materials and undesirable impurities. Evaporation of the extracted product removes the solvents and concentrates the aqueous solution, producing the final product which is "Teepol," as offered to the market.

At the trial on rehearing, defendant sought to bring the merchandise in question within the provisions of paragraph 5 of the Tariff Act of 1930, which reads as follows:

PAR. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

To show the application of the foregoing paragraph, defendant recalled its witness, Herbert W. Eckweiler, whose testimony at the original hearing is summarized in the decision, C. D. 1517, *supra,* as follows:

Herbert W. Eckweiler, concededly a qualified chemist employed in the United States Customs Laboratory at New York, based his testimony on his own analysis of the merchandise in question, illustrative exhibit 2, and stated that the product under consideration consists chiefly of ester salts which he defined as chemical compounds having "both the functions of an ester and the functions of a salt," that the ester salts were not produced separately and then mixed but resulted from a chemical reaction. His conclusion was that "Teepol" is not a soap.

The witness, in his testimony on rehearing, characterized the different operations followed in the course of producing "Teepol." In this connection, he testi-

fied that the sulfation of the olefins with sulfuric acid "is a common chemical step by which many alcohols are made commercially"; that the neutralization with caustic soda is "a chemical reaction"; that the hydrolysis of the dialkyl sulfates to the monoalkyl sulfates is a chemical process; and that the extractive treatment for removal of unreacted materials and undesirable impurities "is not a chemical reaction, it is a physical separation through solvents" (R. 291). In conclusion, the witness stated that "Teepol" is not a single chemical compound since there are a number of carbon compounds in it; it is actually a mixture of chemical compounds" (R. 292). "It is a chemical compound having more than one chemical grouping in it; it has an ester grouping in it, it has salt grouping in it, you can also say it has hydrocarbon grouping in it." (R. 304–305.)

In rebuttal, plaintiffs recalled their witness, Willem Leendert Johannes De Nie, a chemist associated with the Product Development Department of the Shell Chemical Corp., who repeated the opinion given in his original testimony to the effect that "Teepol" is predominantly a salt. The witness also testified that there are two "main uses" for "Teepol," which he explained as follows:

It is used in two different ways, mainly. It is used as such in solution, the Teepol the reference is being made to is a solution of active compounds in water and it is usually as a 35% concentration; some of it is used as such, or after dilutions further with water without anything further being done with it. A better part of it is formulated together with other products such as maybe phosphates or other products and in those processes most of all of the water originally present in the Teepol may be removed and the final product is used as a detergent in the solution.

The foregoing testimony shows a current use for "Teepol," which is a condition not disclosed in plaintiffs' original presentation of this case. Heretofore, and in our original decision, C. D. 1517, *supra*, we found that "Teepol" had only limited use during the war period when it was employed as a substitute for fatty alcohol. Plaintiffs' supplemental testimony, as hereinabove quoted, shows a use of the merchandise at the present time as a detergent. However, this new factual phase of the case does not affect our conclusion.

The factual findings in our original decision, C. D. 1517, *supra*, were expressed as follows:

On the record as hereinabove outlined, we find that the merchandise in question has the characteristics of a salt and also those of an ester. Although plaintiffs' proof includes a statement that the "salt characteristic" is predominant, the ester group is equally essential, as disclosed by defendant's witness, Ross, whose testimony contains the statement that "Teepol," without the ester group "would be nonexistent. You would have nothing."

"Teepol," however, is more than an ester. It is a commodity, resulting from several operations, involving chemical adjustments and reactions, and employing a variety of materials. The series of processes produces a manufactured product, possessing a combination of different chemical characteristics that impart properties peculiar to "Teepol," the finished article. * * *

The testimony adduced by the parties at the trial on rehearing is not sufficient to disturb any of the findings heretofore expressed in this case. The statement by defendant's witness that "Teepol" is "a mixture of chemical compounds" does not *ipso facto* invoke the provisions of paragraph 5, *supra*, which defendant seeks to apply herein. "Teepol" is a commercial product. While some components may be chemical compounds, "Teepol," in its imported condition, is a finished product, a synthetic detergent. "In providing for chemical compounds, the Congress must have had in mind chemical compounds commercially salable as such," *United States* v. *W. H. & L. D. Betz*, 30 C. C. P. A. (Customs) 16, C. A. D. 208.

Counsel for defendant, in their brief, stress the case of *United States* v. *Rhodia Chemical Co.*, 11 Ct. Cust. Appls. 388, T. D. 39315, which involved a commodity called "Acetol," described as "a fine white powder resulting from the chemical reaction of acetic anhydride on cellulose." The collector classified the merchandise under a provision for "compounds * * * of other cellulose esters" (paragraph 25 of the Tariff Act of 1913), and the importer sought classification of the goods as a chemical compound (paragraph 5 of the Tariff Act of 1913). The court found that "acetol is a chemical compound and that it belongs to the class of chemical compounds known as cellulose esters," and resolved the issue, invoking the principle of relative specificity and holding that the provision for "esters of all kinds" (paragraph 29 of the Tariff Act of 1913) was more specific than the provision for "chemical compounds" (paragraph 5 of the Tariff Act of 1913). The statutory construction applied in the cited case has no application in the present case. Here, we are concerned with a finished product that is neither an ester nor a salt, but which possesses the characteristics of both, imparting to "Teepol" its peculiar properties essential for its use as a detergent.

Defendant's brief also quotes at length from *Kachurin Drug Company* v. *United States*, 24 Cust. Ct. 264, C. D. 1246 (affirmed in *United States* v. *Kachurin Drug Company*, 39 C. C. P. A. (Customs) 36, C. A. D. 459). That case involved a chemical product, identified as "ammonium ichthosulfonate," which was classified as a medicinal preparation and claimed to be a drug. The questions of law and fact presented therein were materially different from those in this case. The said case has no bearing on the issues now before us.

Consideration has been given to all of the cases cited in the briefs of counsel for the respective parties, but we deem it unnecessary to our conclusion to review more than what has been hereinabove outlined.

On the basis of the combined records, and for the reasons set forth in our previous decision, C. D. 1517, *supra*, as well as those stated herein, we adhere to the conclusion reached in the previous decision and hold the merchandise in question to be properly classifiable as a nonenumerated manufactured article, under paragraph 1558 of the Tariff Act of 1930, and dutiable thereunder at the rate of 20 per centum ad valorem. That claim, made by plaintiffs through a valid amendment to their protest, is therefore sustained, and judgment will be rendered accordingly.